## The Avoca.[1]

Boyes *et al. v.* The Avoca. Wells *et al. v.* Same. Ellis *et al. v.* Same. Briggs *et al. v.* Same.

*(District Court, E. D. New York. July 12, 1889.)*

1. SALVAGE—COMPENSATION.

A fire broke out on a steamer lying on the north side of an oil-dock in the East river, which spread to the pier, and immediately afterwards to the bark A., which was lying on the south side of the pier, with nearly 10,000 barrels of oil aboard. Almost as soon as the fire broke out it was discovered by the tug A. E. C., which, with all the speed possible, made for the fire. Arriving at the burning pier, the tug took hold of the bark, hauled her into the stream, where she was anchored, and then the crew of the tug boarded the bark, and aided the latter's crew in extinguishing the fire. The time occupied in towing out the bark was about 20 minutes. The fire was wholly extinguished in an hour and three-quarters. The A. E. C. was the only tug able at the time to assist the bark. The latter and her cargo were worth some $70,000. *Held*, that the tug should recover $5,000 salvage.

2. SAME—UNNECESSARY AID.

After the bark had been towed into the stream and anchored, and while the crews of the bark and the tug were engaged in extinguishing the fire, two other tugs came along-side to assist. *Held*, that the fire would have been extinguished without their assistance; that what little aid they rendered was not needed; and that they were not entitled to salvage compensation.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.

Actions by James Ellis and others, Jonathan H. Wells and others, as owners and crew of the steam-tug Alice E. Crew, and Alison Briggs and others, and Charles W. Boyes and others, as owners of the steam-tugs Arrow and Excelsior against the bark Avoca, to recover salvage compensation for services rendered in extinguishing and protecting from fire.

*George W. Dease*, for libelants Ellis *et al.*

*Wing, Shoudy & Putnam*, for libelants Wells *et al.*

*Alexander & Ash*, for libelants Briggs *et al.*

*Wilcox, Adams & Macklin*, for libelants Boyes *et al.*

*William A. Walker*, for claimants.

BENEDICT, J.    These actions are to recover salvage compensation for services rendered to the bark Avoca on the occasion of a fire at the oil-docks on the 11th day of October, 1888.    They were tried together, and. may be disposed of together.

At a little after 5 o'clock in the morning of the 11th day of October, 1888, a fire broke out on the steamer Hafis, lying on the upper side of the pier at the foot of North Eleventh street, on which pier was a shed used for storing petroleum oil, in which at the time there were 30 barrels of refined oil, and upon which was a pipe-line, used for the purpose of carrying petroleum in bulk into tanks upon ships lying at the pier.    On the south side of the pier lay the bark Avoca, her foremast being about abreast of the shed upon the pier.    The Avoca had taken on board some 9,600 barrels of refined petroleum oil, and at the time the fire broke out lay fast to the pier, having 4 barrels of oil upon the deck, and her hold nearly full of refined oil in barrels.    A few moments after the fire was discovered the bark caught fire from the blazing shed.    The fire was from the beginning rapid and dangerous, and there was no possibility of aid from the shore.    Almost at the time the fire broke out it was discovered by the pilot of the Alice E. Crew, a steam-tug, then on the other side of the river, about a mile and a half distant.    He at once made for the fire, signaling his engineer to give the tug all the speed possible. Arriving at the burning pier, the tug at once proceeded to give a line to those on board the bark, and to haul her into the stream, the sails of the bark and her bulwarks being at the time ablaze.    The slip was about 100 feet wide, and in towing out the bark came in contact with a vessel on the other side of the slip, from which she was speedily extricated, and then taken to an anchorage near a reef in the river at that point. As soon as the bark was anchored the crew of the tug boarded her, and assisted the master and crew in extinguishing the fire.    This was accomplished without difficulty by the use of buckets and the tug's hose.    The damage done to the bark by the fire was the loss of some sails, the jib-boom, some feet of her bulwarks, and some of her deck plank.    Her repairs cost $1,280.    The time occupied in towing the bark out to the . place of anchorage did not exceed 20 minutes.    The fire on board the bark was wholly extinguished in the course of an hour and three-quarters..

When the bark was anchored she was in danger of striking the reef when the tide changed. She was therefore held away from that by the tug, so that she did not strike. After the fire was out, the tug took the mate of the bark—the master being absent—down to his owners in New York, leaving him there about 10 o'clock in the morning. The value of the bark was $35,000, less $1,280, the cost of repairs. The value of the cargo was $36,760. While the bark was at anchor, and the crew of the bark engaged with the crew of the Alice E. Crew in extinguishing the fire upon the bark, the steam-tug Arrow and also the steam-tug Excelsior came along-side the bark, and now claim to have rendered services in extinguishing the fire on the bark, for which they also demand salvage compensation. It is not to be doubted that the services rendered by the Alice E. Crew on this occasion were salvage services of an important character. Had it not been for the timely presence of the Alice E. Crew, the proofs render it certain that the bark and her cargo would have been wholly destroyed, as were other vessels, by the same fire. The services so rendered were promptly rendered, to a vessel in great distress. They were voluntary, and they resulted in saving the vessel and her cargo from destruction. An effort has been made on the part of the claimants to maintain that in the absence of the Alice E. Crew, the bark would have drifted in the ebb-tide away from the pier, and might have escaped destruction. I cannot believe that such would have been the fact. My opinion is that, in the absence of aid from some tug, the bark would have burned up. It has also been contended that the bark might have been saved by the tug Emperor, a tug that arrived at the pier at about the same time as the Alice E. Crew. But the proof is clear that the Emperor devoted herself to the steam-ship Hafis, and in the taking off her men from the end of the pier, and would not have been able to assist the bark at the same time. The fact is that, owing to the intensity of the fire, and the exposed position of the bark, no tug except the Alice E. Crew was present in time to afford any valuable assistance to the bark. The services, however, were of short duration, and involved no special skill or hazard to the salvors. The case is that of some $70,000 worth of property saved from total loss by the timely aid of the only tug able to render any assistance. Such a case calls for a liberal award. In my opinion the tug should recover for her services on this occasion the sum of $5,000. In regard to the services rendered by the Arrow and the Excelsior, in my opinion neither of those vessels are entitled to salvage compensation. Their services were not needed. The Alice E. Crew was along-side the bark, and her crew and the crew of the bark were engaged in putting out the fire, and it would have been extinguished without any aid from the Arrow or the Excelsior. The little aid that they did render was not required, and I am unable to award to them any compensation therefor. The libel in the case of Briggs must therefore be dismissed, but without costs, and the libel of Boyes must also be dismissed, but without costs. In the other two cases, which are one for the owners and the other for the crew of the Alice E. Crew, a decree against the bark and her cargo will be rendered for the

sum of $5,000, and the taxable costs. The award will be apportioned hereafter among the salvors by the court, unless they agree among themselves as to its division.[1]

---

[1] The parties being unable to agree as to the division, the court subsequently distributed the $5,000 among the salvors, awarding $3,750 to the owners of the tug, and $1,250 to the master and crew.—[REP.

