## THE BAY OF NAPLES *et al.*

### HALL *et al.* *v.* THE BAY OF NAPLES *et al.*

*(Circuit Court of Appeals, Second Circuit. December 14, 1891.)*

**1.** ⌣⌣. AGE—DISCRETION OF TRIAL COURT—REVIEW.
   Although the amount of salvage rests in the discretion of the court awarding it, an appellate court may reduce the award, if in making it there was a clear and palpable mistake, or violation of just principles, or a departure from the path of authority.

**2.** SAME—EXCESSIVE AWARD—EVIDENCE.
   A vessel at anchor in New York harbor, laden with petroleum in wooden cases, took fire, and, but for the prompt services of tugs which came to her assistance, would have been totally destroyed in a few moments. The saving to the owners was ascertained to be $81,400, and $20,000 was awarded the tugs as salvage. The vessel was of iron, and iron rigged. The salvors encountered no peril to person or property, and the extinction of the fire required no extraordinary exertion on their part. *Held*, that the award of salvage was excessive, and should be reduced to $12,000.
   44 Fed. Rep. 90, reversed.

Appeal from the circuit court of the United States for the eastern district of New York.

In Admiralty. Libel by John Hall and others against the ship Bay of Naples for salvage. Decree for libelants for $20,000, which was affirmed *pro forma*, on appeal to the circuit court. From the decree of the circuit court the claimant appeals. Reversed.

*Wilhelmus Mynderse*, for appellant.
*Edward G. Benedict*, for the tug Charm.
*De Lagnel Berier*, for the steam-boat John Sylvester.
*Charles C. Burlingham*, for the tugs Leader, Indian, and Talisman.
*Joseph F. Mosher*, for the tugs Geo. L. Garlick, M. Moran, and John T. Pratt, libelants and appellees.

v.48F.no.9—47

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. This cause comes here on an appeal from an affirmance *pro forma*, by the circuit court, of a decree made by the district court of the eastern district of New York, awarding salvage to the amount of $20,000, with costs. Shortly before midnight of September 2, 1889, fire broke out in the cargo of the ship Bay of Naples, in the between-decks, near the fore-hatch. She was lying at anchor below Bedloe's island. Her cargo was refined petroleum, of 150 deg. fire test, packed in 55,600 wooden cases, each containing 2 tin cans of 5 gallons each. A little after midnight the tug M. Moran, then bound to sea with a vessel in tow, discerned the fire, hastened to the spot, and was asked to give assistance, to which request she promptly responded. Subsequently, and at different times, the ferry-boat John Sylvester, other tug-boats, and, finally, the police-boat Patrol, rendered service in extinguishing the fire. The services consisted of throwing water, handling the hose at the fore-hatch, and towing the Bay of Naples from her anchorage, in deep water, to the flats at Governor's island, where she was beached. The fire was substantially extinguished about 5:30 A. M., and all services were then discontinued. Further details of the situation and of the work done will be found in the opinion of the district court, (44 Fed. Rep. 90,) which correctly sets forth the material facts. The saving to the owners was $81,400, and the aggregate award was $20,000, about 25 per cent. The claimant has appealed, contending that the awards are grossly in excess of a fair remuneration as salvage for the services rendered.

Appellate courts rarely reduce salvage awards, unless there has been some violation of just principles, or some clear and palpable mistake. They are reluctant to disturb such award, solely on the ground that the subordinate court gave too large a sum, unless they are clearly satisfied that the court below made an exorbitant estimate of the services. Such is the rule in the supreme court, which, even before the passage of the act of February 16, 1875, limiting its authority to revise a decree in admiralty to questions of law, was always extremely loath to interfere with the amounts awarded, after due examination of the case by two subordinate tribunals; and circuit courts, appreciating the fact that different judges, even when possessing equally enlightened and sound judgments, would rarely form precisely the same estimate, have discouraged appeals, which sought only to substitute the discretion of a circuit judge for that of the district judge. *The Connemara*, 108 U. S. 360, 2 Sup. Ct. Rep. 754; *The Camanche*, 8 Wall. 448; *Rowe* v. *The Brig*, (STORY, J.,) 1 Mason, 372. But it is equally true that, when the law gives a party a right to appeal, he has the right to demand the conscientious judgment of the appellate court on every question arising in the case, and the allowance of salvage originally decreed has, in many cases, been increased or diminished in the appellate court, even where it did not violate any of the just principles which should regulate the subject, but was unreasonably excessive or inadequate. *Post* v. *Jones*, 19 How. 161. Although the amount to be awarded as salvage rests, as it is said, in the discretion

of the court awarding it, appellate courts will look to see if that discretion has been exercised by the court of first instance in the spirit of those decisions which higher tribunals have recognized and enforced, and will readjust the amount if the decree below does not follow in the path of authority, even though no principle has been violated or mistake made. Instances of such review are found in *Rowe* v. *The Brig*, 1 Mason, 372, (STORY, J.;) *The Suliote*, 5 Fed. Rep. 99, (BRADLEY, C. J.;) *The Blaireau*, 2 Cranch, 240, (MARSHALL, C. J.;) *The Connemara*, 108 U. S. 352, 2 Sup. Ct. Rep. 754, when the circuit court reduced the amount from 8 to 6 per cent.

The circumstances which are to be taken into consideration in determining the compensation to be made for salvage services are too well known to call for restatement or discussion. The district judge found several of them prominent, in this case, to a marked degree. The facts which operated to induce the making of so large an award are recited in his opinion. The ship and cargo were in imminent danger of total destruction. They were, it is true, in the harbor of New York, but the ship lay where the fire-boats of the corporations of New York and Brooklyn would not go,—being at anchor, not at a dock,—and the fire broke out at a time when tugs generally are laid up, and scarcely a vessel about except a few ferry-boats. With fire in such a cargo it was a question of minutes; a brief delay would have given it such headway as would have put it beyond control. The captain himself, even after the first tugs and the ferry-boat had arrived and got to work, expressed the opinion that his ship could not be saved. The tugs were provided with powerful pumps, were well fitted for the work they undertook, gave their services voluntarily, with great promptness, and were eminently successful, only 283 cases receiving any damage, and the actual loss of oil being only 72 cases. The presence of the police-boat Patrol did not affect the salvage, because, although the fire was still burning when she arrived, it was under control, and certain to be extinguished by the tugs; she only hastened the end.

The evidence fully sustains these conclusions of the district judge, and the service was undoubtedly highly meritorious, and entitled to a liberal reward. On the other hand, the service in question was rendered without exposure or peril to person or property. The Bay of Naples was an iron vessel, with iron masts up to the top-mast heads, and all her rigging was wire. The fire was in the top tiers of cases between decks, and, though the flames occasionally rose up above the hatch, the crews of the tugs and of the ship were able at all times to stand by the fore-hatch and play down into the hold. There was no personal peril encountered by the salvors nor any extraordinary exertion on their part. The district judge so found, and the libelants, upon the argument, conceded such to be the fact. The extent and danger of the services performed, and the risk to which the vessels and other property employed in the service were exposed, are always important ingredients in a salvage service. A somewhat exhaustive examination of the decisions of the federal courts, bearing upon the question of amount of salv-

age, shows that, except in the case of derelicts, where the old moiety rule, though no longer followed, has yet left traces of its influence, and in a few other cases, where there were exceptional circumstances, no such large percentage on so large a net value saved, the property being in like straits, has been awarded, when there has been neither risk of life or property, nor extraordinary exertion in saving it. The case relied on chiefly by the claimant is *The Lone Star*, 34 Fed. Rep. 807, a decision by the same district judge who decided the case at bar, (affirmed in the circuit court, 35 Fed. Rep. 793.) In that case 22 per cent. to 30 per cent. was awarded, but the service rendered in moving the vessel, "enveloped in flames," from the slip, was attended with danger, there being such risk of fire that several tugs applied to by the superintendent to go into the slip refused to do so; and the subsequent service in throwing water upon the steamer, which "was burning furiously," involved some danger to the vessels engaged in the performance, with hard labor and exposure to a north-west gale in freezing weather. The case at bar bears a strong analogy to that of *The Blackwall*, 10 Wall. 1, where an award of $10,000 for saving property to the amount of $100,000 was approved by the circuit court and by the supreme court, and to that of *The Avoca*, 39 Fed. Rep. 567, where $5,000 was awarded on $70,000 saved.

Upon all the facts we are of the opinion that the amount of salvage awarded by the district court is so much in excess of the usual rate for services of like character, rendered under similar circumstances, as to call for a material reduction, and think that $12,000 is a liberal allowance. The evidence shows that the ferry-boat Sylvester was, for a time, unreasonably obstructive to the police-boat Patrol, preventing it from bringing its powerful pumps into service for nearly half an hour. The award to her owners and crew should, for that reason, be reduced one-third. The decree of the circuit court is reversed, and the cause remitted to that court for further proceedings, in accordance with the views above expressed. Costs of this appeal to the appellant.