# THE BOYNE.

# THE VOLAGE.

(District Court, E. D. Virginia. May 18, 1899.)

1. SALVAGE—AMOUNT OF AWARD.

The absence of other assistance is an important element to be taken into consideration in determining the amount of a salvage award.

2. SAME—FACTS CONSIDERED—RESCUE OF SHIPS FROM BURNING WHARF.

Two large steamships were lying side by side in a slip 150 feet wide, near the shore end, fastened together, while one was made fast to a pier, when, during the night, while neither had steam up, a fire broke out on the wharf, which burned rapidly, destroying the pier to which they were made fast,

together with the shipping between that and the adjoining pier; only one vessel, which had steam up, being able to save herself. The ships cut loose from the pier, but were unable to work themselves out of the slip. The pier on fire was 800 feet long; and the one opposite, 650 feet. The ship nearest the burning pier had already taken fire, when libelants, with their tug, came voluntarily to their assistance, entered the slip, and succeeded in towing both to a place of safety; neither having sustained more than slight injury. The ships, with their cargoes, were of the value of about $240,000, and the tug was of the value of $12,000. The time consumed in the service was 15 to 20 minutes. There was no other assistance at hand. *Held*, that taking into account the extreme peril of the ships, and their almost certain loss, as shown by the evidence of disinterested witnesses, but for the timely, prompt, and energetic assistance rendered by the tug, libelants were entitled to salvage to the amount of 5 per cent. on the value of the ship nearest the fire and her cargo, and 3½ per cent. on value of the other and her cargo.[1]

In Admiralty. These were libels on behalf of the owners, master and crew of the steamtug Luckenbach, for salvage services rendered to the steamships Boyne and Volage.

Whitehurst & Hughes, for libelants.
Sharp & Hughes, for respondents.

WADDILL, District Judge. These are two admiralty cases, heard together, in which the owners, master, and crew of the steamtug Luckenbach seek to recover salvage against the steamships Boyne and Volage for services rendered them on the 27th of April, 1897, while at the port of Newport News, Va. The said steamships were lying in the slip, near the shore end, between piers 4 and 5 of the Chesapeake & Ohio Railway Company's wharves; the Boyne being at the time fastened with its starboard side to pier 5, and the Volage lying along its port side, and made fast to it. The two ships were large ones,—the Boyne being 285 feet in length, and 34½ feet beam; and the Volage, 336 feet in length, and 43 feet beam. The total valuation of the two ships was at the time $239,827,—the valuation of the Boyne being $60,000, and its cargo $12,000; the Volage, $130,000, and its cargo $37,826. The value of the Luckenbach was about $12,000. About 4:30 o'clock on the morning of the 27th of April, 1897, while said ships were lying at the pier, a terrific fire broke out on the wharves of the Chesapeake & Ohio Railway Company; and piers 5 and 6, together with the shipping between said piers, with the exception of a steamship of the Old Dominion Line, which had steam up, and managed quickly to move out, were consumed by fire. The tide at the time was flood, and the wind blowing strongly from N. W. to N. to N. N. W. Pier 5, against which the Boyne was lying, was 800 feet in length, and the next pier, No. 4, 650 feet in length, and the width of the slip between said two piers was 150 feet. At the earliest moment after the breaking out of the fire, neither of the ships having up steam at the time, they cut loose from pier 5, which was on fire, and, by working the winches of their donkey engines, warped themselves as rapidly as possible across to pier 4, and then attempted to warp out of the slip alongside of pier 4,

[1] As to salvage awards in federal courts, see note to **The Lamington**, 30 C. C. A. 280.

to which the fire had not spread, though it was in imminent peril of catching. The ships worked down along pier 4, their bows being lashed together and sterns separated, until within, say, 50 feet of the end of pier 4, and 200 feet of that of pier 5, the latter being 150 feet longer than the former, when the steamtug Luckenbach steamed up, and, at the instance of the master of the Volage, made fast to her; and the master of the Luckenbach then insisted that a rope should be extended from the tug to the Boyne, which was done, and the two ships were towed out into the stream and placed in a position of safety; the Boyne having in the meantime, before it could be gotten out, taken fire.

Libelants insist that they rendered salvage service of a highly meritorious character, and should be liberally rewarded, and urge that an award of 15 per cent., or $10,800, should be made against the Boyne, and 10 per cent., or $16,718.82, against the Volage; and, on the other hand, respondents say that, while they are entitled to some compensation, the salvage service was of a low order of merit, and they should only receive $250 in each case, and no costs, because of the large amount sued for.

That the libelants, under the circumstances of these causes, are entitled to salvage, cannot be seriously questioned, and, indeed, this is admitted. The services were voluntarily rendered to the ships when in great peril, and the right of recovery is clear. The Blackwall, 10 Wall. 1, 19 L. Ed. 870; The Henry Ewbank, 1 Sumn. 400, Fed. Cas. No. 6,376.

The really controverted question is the amount of the allowance, and about that, certainly as between counsel, there is great divergence of views; and the evidence is not free from the usual conflict in admiralty cases, though I have but little difficulty in arriving at the material facts in the case. Unlike such cases ordinarily, the evidence is not confined to the parties in interest, but the libelants have examined quite a number of witnesses of character and experience in such matters, who have no manner of interest in the controversy, and were eyewitnesses to all that occurred at the time of the fire. The leading considerations to be observed in determining an award for salvage service are well defined by a long line of decisions, and need not be restated here. The Blackwall, 10 Wall. 1, 14, 19 L. Ed. 870; The Sandringham (D. C.) 10 Fed. 573; The Egypt (D. C.) 17 Fed. 367; Simonton, Fed. Prac. §§ 231, 232. That the ships, at the time they were removed by the tug, were in a position of great peril, and from which they could not themselves have escaped, I think there can be no doubt upon the whole evidence. One of them had actually taken fire. The other was lashed onto it, and between two piers, only 150 feet apart, one of which was rapidly burning, and the other in the greatest possible danger of catching. Indeed, its taking fire was only prevented by the pouring of water upon it by means of its own fire appliances. But for the expeditious removal of the two ships at the moment they were taken out of the slip by the Luckenbach, it is quite clear they would have been destroyed, and the flames, in all probability, spread from them to pier No. 4, and it, too, consumed. The length of time it would have taken to warp the ships

out by means of the winches of the donkey engines, if it could have been done at all after the end of pier No. 4 was reached, in my judgment made that method of escape impracticable. The ships, one being already on fire, would during the time either have burned, or certainly, in attempting to warp out of the space between the two piers, of 150 feet, have been destroyed by coming in contact with pier No. 5, on which the fire was then raging. The distance between the two piers, taking into consideration the space occupied by the ships themselves, and the fact that they were some feet apart at their sterns, would seem to be conclusive of the question of whether or not they were in a position of extreme peril; and, when it is remembered that one of them had already taken fire, the question of peril would no longer appear to be in dispute. Time, in the position in which the ships were, was of vital importance. The least delay would have been fatal, and this time was just what was saved by the arrival of the Luckenbach. The Bay of Naples (D. C.) 44 Fed. 90, 92. That the services of the libelants were skillfully, energetically, and promptly rendered, is not disputed; nor is the fact that there was no other assistance at hand. There was no chance of aid from the fire department of Newport News; nor was there any other tug or steamer or other means by which these two ships could have been saved from the almost certain flames in which they would have been enveloped. The only steamer that was saved at all between any of the piers was the Old Dominion Company's ship, which happened to have up steam, and prudentially saved itself, without time to render assistance to others. The absence of other assistance is an important element, and should be taken into account in ascertaining the amount of a salvage award. The Indiana (D. C.) 22 Fed. 925; The O. C. Hanchett, 22 C. C. A. 678, 76 Fed. 1003; The Monticello (D. C.) 81 Fed. 214; The Roman Prince (D. C.) 88 Fed. 336.

The value of the salved property is undisputed. It amounted to nearly a quarter of a million of dollars, and was salved with only inconsiderable loss. And while the value of the property employed by the salvors was not very large, in proportion to what was saved, and the danger to which it was exposed was not great, still there was some risk incurred, as it is quite clear from the evidence that the Luckenbach came into the piers at least 50 feet alongside of pier No. 4. Some of the evidence tended to show that it came in much further; but I think it fair to say it came 50 feet, and in that position made fast to the two ships, and took the chances of danger from fire, and the wind blowing it down against the burning pier 5, and the risk of strain on its machinery in moving two ships of the size of these, and carrying them out to a place of safety. The time consumed. it is true, was not very great,—not exceeding 15 or 20 minutes; but it was all that was necessary to do the work in hand successfully, and the services were rendered at just the time to save the two ships and their cargoes.

On the question of the amount of award the authorities differ greatly, and each case depends so largely upon its own peculiar facts and circumstances that it is difficult to obtain much assistance from adjudicated decisions; but generally it may be said that compensa-

tion as salvage is not fixed on the principle of a quantum meruit, or as a remuneration pro opere et labore, but as a reward given for perilous services voluntarily rendered, and as an inducement to seamen and others to embark in such undertakings to save life and property. In The Connemara, 108 U. S. 352, 2 Sup. Ct. 754, 27 L. Ed. 751, only the tug engaged to tow the steamer, its officers and crew, two passengers, and one passenger on the burning steamer, rendered assistance. The fire occurred at 11 o'clock in the night, on the Mississippi river, and broke out in the poop above the main deck, and near the door, which could be opened by raising the latch, and, when discovered, was confined to three bales of cotton, a square sail, and two coils of tarred rope; and only these articles were partially destroyed, and the upper deck, or roof of the poop, partly burned, and the ship and the cargo were not otherwise injured. The time consumed was not over 15 or 20 minutes, and there was no serious risk or damage to the tugboat, or of injury to life or limb of any one of the salvors, and the services were rendered when other assistance was near at hand. The supreme court approved an award of 6 per cent., or $14,198, upon the gross valuation of the ship and its cargo, of $236,637. In The Avoca (D. C.) 39 Fed. 567, an award of $5,000 to a tug and its crew was made by Judge Benedict against a bark and her cargo, valued at $70,000. In this case there was no special hazard to the salvors, or skill required on their part; the services were of short duration, the removal of the bark to a position of safety consuming only about 20 minutes; the fire entirely extinguished in an hour and three-quarters; and other aid was readily at hand; and there, as here, the claim was made that the bark could have relieved itself, but the court thought differently, and emphasized the fact that, owing to the intensity of the fire, and the exposed position of the bark, no other tug was present in time to afford any valuable assistance to the bark. In The Bay of Naples, 1 C. C. A. 81, 48 Fed. 737, an award of $12,000 upon a valuation of $81,400 was made by the circuit court of appeals of the Second circuit, reducing an award of $20,000 made by the district and circuit courts for the Eastern district of New York in the same case. (D. C.) 44 Fed. 90. The time employed was five hours, the weather fair, and the salvors encountered no peril to person or property, and no extraordinary exertion was required of them. In this case my opinion is that a proper salvage award is 5 per cent. upon the value of the Boyne and her cargo, and $3\frac{1}{2}$ per cent. upon that of the Volage and her cargo,—that is, for the sum of $3,600 against the Boyne and its cargo, and $5,873.94 against the Volage and its cargo; and a decree may be entered for these amounts, with interest.