---

## THE PERU.

(District Court, E. D. Pennsylvania. February 15, 1900.)

SALVAGE—AMOUNT—TOWAGE SERVICES.

A sailing ship valued at $60,000 was in imminent danger of being destroyed by fire, which had started in the sheds on a wharf near which the ship lay. She was on fire in several places, when a tug ran up under her bow, took a line from the ship, and towed her away immediately. There was no difficulty in towing the ship, and after the two vessels left the wharf the peril was over. The injury to the ship did not exceed $150. The value of the tug was not more than $3,500. If the tug had not been present, a fire boat would have performed the services. The tug was at no time in danger. *Held*, that $2,500 should be awarded the tug as salvage.[1]

In Admiralty.

Horace L. Cheyney and John F. Lewis, for libelant.
Edward F. Pugh and Henry Flanders, for claimant.

McPHERSON, District Judge. On June 13, 1898, the German sailing ship Peru was lying at the bulkhead wharf of the Philadelphia Refinery, upon the east bank of the Schuylkill river. She was a three-masted steel vessel, of 2,096 tons register, three or four years old, in good repair, and properly equipped. Her masts were of steel, her standing rigging was of steel covered with tarred rope, and her running rigging was mainly of Manilla rope. Her deck was of steel, covered with pitchpine. Some of her spars were of wood, and some were of steel or of iron. Her value was about $60,000. She was empty, except for some sand ballast, but was soon to be loaded with case oil for Japan. She was lying with her head up stream, towards the north, and her starboard side towards the wharf. About 50 feet south of her a barge belonging to the Atlantic Refining Company, containing acid in large iron tanks, was moored; and perhaps 100 or 150 feet further down lay two large iron vessels, the West Lothian, which was next to the wharf, and the County of Haddington, which was immediately outside the

[1] As to salvage awards, see note to The Lamington, 30 C. C. A. 280.

West Lothian, the yards of the two vessels being interlaced. A frame shed, about 200 feet in length and 10 feet in height, stretched along the wharf, and contained in the southern end a large quantity of case oil, and in the northern end paraffine wax, and perhaps some other petroleum products. The West Lothian had on board a valuable cargo of case oil, but the County of Haddington was in ballast. The tide was flood, and there was no wind, except a light westerly breeze. About 7 o'clock a fire broke out in the southern end of the shed, spread with considerable rapidity, and, owing to the inflammable nature of the materials at hand, burnt with fierceness. The tug Josephine Lincoln was on her way down the river, towing two empty canal boats, when she saw the smoke from the fire. She immediately put on full speed, dropped the canal boats at Gibson's Point, about half a mile distant from the refinery, upon the opposite bank of the river, and proceeded at once to the scene of the fire. As she came down the river, she was overtaken by the King, a large and well-equipped fire boat, belonging to the city of Philadelphia, which was on its way to render such aid as might be possible. The two boats approached the wharf side by side, and, as they neared the Peru, the captain of the King shouted to the Lincoln to go in and save the Peru, while he himself went on to the other end of the wharf. The Lincoln thereupon ran up under the bow of the Peru, took a line from the ship, and towed her away immediately. At this time the fire had so increased in volume and fierceness that the West Lothian—which was earliest exposed—was already seriously injured, although she and the County of Haddington had been promptly towed away by two powerful and well-appointed tugs belonging to the refinery, which were kept in constant readiness for special service of this kind. The barge was in flames, and became a total wreck. The shed was on fire from end to end, and the heat on board the Peru was so great that the men could scarcely stay on deck. An attempt had been made by the crew to haul the ship ahead, but they were unable to move her. She had taken fire in several places on the starboard quarter, and a boat had been lowered over the port side to enable the crew to leave in safety and to remove their personal effects. Some burning oil was upon the surface of the water, not far astern of the Peru, but the Lincoln was not threatened by this source of danger. There was no difficulty in moving the Peru, and after the two vessels left the wharf the peril was over. The ship's crew put out the fire on board, which had done little damage, and she was slowly towed to Gibson's Point, where the Lincoln attended upon her until half past 10 o'clock, when the tug was notified that her services were no longer needed. The injury to the Peru probably did not exceed $150, but there can be no doubt that she was in a situation of extreme danger. Everything upon the wharf that could be burnt was consumed, as well as the combustible portions of the bulkhead itself. The Lincoln is a small iron tug of 10 tons capacity, 50 feet long and 11 feet wide, with an engine having a capacity of 110 pounds of steam. She is 24 years old, is manned by four men, and her value does not exceed $3,500. Her captain received $45

per month, the engineer $50, and the fireman and cook each $25.

These are the relevant facts from which to determine how much salvage should be awarded to the Lincoln for the valuable aid that she unquestionably rendered to the Peru. From the first, the service was conceded by the ship to be a salvage service, and before the suit was brought some effort was made by the parties to agree upon the proper sum. They did not reach an agreement, but after the ship was attached upon a claim of $7,500 the respondent paid into court the sum of $1,000, with costs accrued to the time of payment. This amount was refused by the libelant, and the question for decision now is, how much more, if anything, should be awarded to the libelant? In cases of salvage, it is often difficult to decide how much should be allowed. The elements to be considered are well known, such as the danger to either vessel, the value of the property at risk, the nature of the service, the nearness of other aid, and the success of the rescuer's effort; but what the final conclusion shall be is, after all, largely dependent upon the effect produced by the particular circumstances upon the mind of the judge. There are no rules to guide him, and the decisions differ so widely, both in their facts and their conclusions, that little help is to be had from this source. Many cases are referred to in The Boyne (D. C.) 98 Fed. 444, and in the note to The Lamington, 30 C. C. A. 280, 86 Fed. 675. Turning, then, to the case before the court, and bearing in mind the facts above set forth, I have no doubt that, if the Peru had not been towed away at the time when that service was performed, she would have been either destroyed or seriously damaged. But it is equally clear that the Lincoln was not indispensable. If she had not been there to render the service, the King would have performed it without delay. The Lincoln herself was at no time in danger, and the work she did was not of an extraordinary character. The tow was unusually deliberate. There was little strain upon either the vessel or the crew. If it had not been for the fire, the labor performed would have merely supported a claim for towage, and this would have been fully compensated by the payment of $50. But I cannot help being influenced by the value of the property saved, and by the imminence and seriousness of the peril to which it was exposed. The tug is not valuable, and was in little danger, but she certainly saved the ship either from destruction, or from the loss of many thousands of dollars. I have not been consciously influenced by the testimony concerning the sums agreed upon by the parties as salvage for the West Lothian and the County of Haddington. I have no doubt that the testimony on this point was competent,—since the three ships were exposed to the same danger, under circumstances much alike,—but I have not felt it necessary to take the sums thus paid into account, the other testimony offering sufficient facts upon which to base a conclusion.

Taking these facts into consideration, therefore, I am of opinion that the tug should receive the sum of $2,500 (including in this award the $1,000, already paid into the registry of the court), and a decree may be drawn for that amount, with costs of suit.