**CANADIAN GOVERNMENT MERCHANT MARINE, Limited, v. UNITED STATES.**

(Circuit Court of Appeals, Second Circuit. April 13, 1925.)

No. 305.

1. **Shipping ⬯61—Owner acts through ship's master.**

In management and navigation of a ship, owner acts through its master, and what he thinks best is owner's intent within very wide limits.

2. **Salvage ⬯31—Award of salvage for beaching and flooding steel ship reduced from $31,-250 to $15,000, plus expenses and costs of District Court.**

Award of $31,250 salvage for beaching and flooding a burning steel ship laden with coal in harbor *held* excessive, and reduced to $15,000, plus expenses and court costs, where work occupied about 11 hours, extending until about midnight, and was attended with nothing more than discomfort by the salvors; value of hull being in excess of $250,000.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel for salvage by the Canadian Government Merchant Marine, Limited, against the United States. Decree for plaintiff, and the United States appeals. Modified and affirmed.

Appeal from final decree in suit under Suits in Admiralty Act, entered in the District Court for the Southern District of New York. Libelant, as owner of steamship Canadian Farmer, sued for salvage services rendered by that vessel to United States Shipping Board vessel Zaca in the harbor of Port of Spain, Trinidad, during about 11 hours of the afternoon and night of October 19, 1920.

Zaca was a steel ship some 426 feet long and laden with a full cargo of 7,400 tons of coal. She burned oil as fuel. While at anchor in Port of Spain, and in or so near the fairway as if sunk to be a menace to navigation, she caught fire on October 18th. The character of her cargo and fuel rendered it impossible to extinguish the flames by any means on board Zaca. There were other merchantmen in the harbor, and a British man-of-war, but nothing more helpful than the suggestion that the war vessel sink Zaca by shell fire was done until about noon of the 19th. By this time the coal cargo was burning, although that fact was not discovered until later.

Before noon of the 19th a survey was held on the Zaca by certain master mariners in port, and it was decided "to tow the ship to the beach and flood her." She was then lying in about 35 feet and drawing 28. The object of this effort, as stated by the agent in Trinidad of Canadian Farmer, was that "there was danger of the Zaca sinking if the fire was not subdued; rather than this should happen in the anchorage ground of the harbor, it was considered wise to make an attempt to move the Zaca and beach her beyond the harbor limits." This was done by the Canadian Farmer, a vessel then light and drawing only about 17 feet, 251 feet over all, and capable of 3,850 D. W. tons.

The work occupied about 11 hours, extended until about midnight, and was attended with discomforts (nothing more), in that men from the Farmer went, as did members of the Zaca's crew, on board the burning vessel, worked the hawsers and fasts, and directed the streams of water which were pumped into the Zaca. Finally the burning vessel was gotten beyond harbor limits, and beached in 25 feet of water on soft mud bottom; at which time "fire in Zaca's engine room, stokehold and poops extinguished. Fire in holds well under control, but smouldering." (This appears from a log kept by Canadian Farmer, signed by Zaca's master, and offered in evidence by libelant.)

Raising and repairing Zaca at Port of Spain was impossible; much of her coal cargo and some fuel oil was ultimately saved, but this suit has nothing to do with cargo. The allegation of libel is that, but for the Farmer's service, Zaca would have "sunk in the fairway of said harbor, thereby subjecting her owners to heavy expenses in raising her or in moving her wreck to a position where it would not obstruct navigation."

The Shipping Board had Zaca pumped out and floated, her cargo and fuel were removed, and efforts made to sell the wreck in Trinidad. An offer of $125,000 was refused or permitted to lapse, and finally, in July, 1921, the hull was towed to New York by another Shipping Board vessel, and, after lying in yard for over two years, was, in the fall of 1923, sold for scrap at $10,500. Evidence is uncontradicted that her engines were, after fire, in such condition that they could never function again. The actual cost (without attributing any value to the towing vessel's effort) of bringing the wreck to New York, was over $100,000.

In October, 1920, the sound value of Zaca was about $1,300,000. On this record her injured value is matter of speculation. In fact, before she could have been repaired, had that been desired, deflation in shipping set in acutely, and vessels like Zaca, even in

good condition, were a drug on the market. The court below gave an award of $31,250—apparently 25 per cent. of what some unidentified person offered for the wreck as it lay on the beach. The United States appealed.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of. counsel), for the United States.

Cadwalader, Wickersham & Taft, of New York City (Charles R. Hickox and Edwin S. Murphy, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It is idle to attempt any hard and fast definition of salvage; it has often been described as a service of benefit to a vessel in distress (e. g. The Menominee [C. C. A.] 300 F. 464). But that is not and does not pretend to be a definition, for that word imports finality, and no branch of marine law has grown more since printed reports began, and none is growing more now, than salvage.

The classic tests of Clifford, J., in The Blackwall, 10 Wall. 2, 19 L. Ed. 870, are still useful, because they serve as a category of reasons for giving much or little; but the learned judge who made the category would have been puzzled to assign this libelant's claim for services in preventing Zaca from sinking in the fairway (ut supra) to any then known branch of salvage. Indeed, if one sticks close to the libel, it is still quite impossible to find justification for an award; for there is no proof at all that, if the steamer had sunk in the fairway, there would have been the slightest obligation on the United States to do anything about it, except let her lie there, a total loss.

[1] But we do not think salvage should be so technically considered. The owner was acting through the Zaca's master. What he thought best was the owner's intent, within very wide limits. Therefore we are convinced that the case should be treated as though the owner had asked libelant to do what he could to fill up the ship with water in a soft berth; though the real reason for taking her out of the harbor was not the vessel's saving, but the saving of annoyance to other vessels.

[2] Therefore the leading inquiry is, What was Zaca worth when she was beached and filled? This happened when shipping values were still very high, and the story of bad management above outlined may serve as a national caution, but does not affect the legal merits of this case. We find that she was worth whatever such a hull was worth so far from markets; her engines were ruined. But to express that in dollars is impossible with exactitude; it was, however, more than $125,000, and certainly less than the book estimates of some witnesses for libelants, who take 55 per cent. off her sound value, and call the result their opinion of injured value. We do not think it necessary to be more accurate than to say that the wreck was worth, if any one had wanted a wreck in October, 1920, more than twice what is said to have been offered for her.

After this finding no question of law is left in the case, for whether the injured value be taken at our very roughly indicated figure or one substantially higher, the award below violates the principles of The Bay of Naples, 48 F. 737, 1 C. C. A. 81, in that it departs wholly from the path of authority. The service was of almost the lowest order of salvage; it was a simple harbor service, and to recount the long roll of such awards in the harbor of New York alone would be a display of pseudo learning.

It is enough to say that, having regard to the reported cases in this circuit, $15,000 is a full reward for what the Canadian Farmer did; and in so finding we wholly disregard the amazing story of inept management after disaster, and the sudden fall in shipping values so evident just when the remnants of Zaca were being expensively towed to the scrap pile.

Decree modified, so as to allow $15,000, plus $550.19 expenses, and costs of District Court. Interest will run only from date of modified decree to be entered on our mandate. Costs of appeal to appellant.