### THE COTTAGE CITY.

(District Court, W. D. Washington, N. D.    March 23, 1905.)

No. 2,130.

SALVAGE—TOWING DISABLED STEAMSHIP TO PORT OF DESTINATION—AMOUNT OF AWARD.

The steamship Cottage City, 1,885 gross tonnage, and worth, with her cargo, $200,000, while on her regular trip from Alaska to Seattle, with passengers and cargo, on October 14th became wholly disabled from proceeding, when in Fitzhugh Sound, and, owing to the depth of water and the disabled condition of her winch, could not have safely anchored in case the weather had become rough, as was likely at that season. The steamship Dirigo, 843 gross tonnage, and worth $80,000, also on her trip to Seattle, answered the distress signals of the Cottage City, and, with the consent of her master, towed her to Seattle, a distance of about 400 miles, being assisted by a tug during the last 90 miles. The weather

was fairly good, and the danger to the Dirigo was not great. *Held,* that the service was a salvage service, and that the Dirigo was entitled to an award of $12,000 against the Cottage City and cargo.

[Ed. Note.—Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty.  Suit to recover salvage for towing a disabled passenger steamer to her port of destination.  Decree for libelant.

Ira Bronson, for libelant.

Piles, Donworth & Howe, for claimant.

HANFORD, District Judge.  On the night of October 14, 1901, the Dirigo, a passenger steamship, on a voyage from ports in Alaska to Seattle, was called by signals of distress to the assistance of the steamship Cottage City, which was then in a disabled condition at anchor in Fitzhugh Sound; and, with the consent of Capt. Wallace, who was in command of the Cottage City, the Dirigo towed her to Seattle, having the assistance of a tugboat which had been sent to the relief of the disabled vessel in making the last 90 miles of the trip, for which service this suit was instituted to recover salvage. Notwithstanding the testimony given in behalf of the claimant which tends to minimize the peril of the Cottage City and the merit of the service rendered by the Dirigo, I consider that it has been proved by a preponderance of the evidence that, although there was no imminent danger of immediate destruction, the Cottage City was in a situation which justified her officers in giving the signals of distress which called the Dirigo to her rescue, and that the Dirigo rendered prompt, willing, and efficient service in bringing the disabled vessel to a port of safety.  In doing this the Dirigo was not exposed to extreme danger, but in towing the Cottage City there was necessarily some degree of extraordinary strain upon her machinery, and her officers and crew performed labor and endured hardships which would not have been required of them in the performance of their ordinary duties in navigating their ship without the burden and responsibility of towing another vessel.  All the elements of a meritorious salvage service have been clearly proved, entitling the owners, officers, and crew of the Dirigo to a reasonable reward.

The material facts, briefly stated, are as follows:  The Cottage City is a steamship of 1,885.11 gross tonnage, and her value at the time referred to, with her cargo on board, was approximately $200,-000.  She was employed as a carrier of passengers and freight, making regular trips between the ports of Puget Sound and Skagway, Alaska, touching at intermediate ports.  On the 14th day of October, 1901, as she was on her regular voyage southward from Alaska, with a full list of passengers on board, on account of some derangement of her machinery her captain decided to turn around and take her into the nearest place of safety, to make needed repairs, and while executing that maneuver her thrust shaft was broken, which deprived her of all use of her propeller.  She was then in Fitzhugh Sound, in the track of all the steamers running between Puget Sound and Skagway.  Being without motive power,

136 F.—32

as she had no sails bent, soundings were taken, and the depth of water was ascertained to be from 75 to 80 fathoms. Her winch, upon which she depended for power to lift her anchors, was in a disabled condition, and incapable of raising an anchor with chain cable from the bottom in that depth of water; and for that reason a 6-inch manilla hawser was attached to her starboard anchor, and a 5-inch manilla hawser was attached to the other end of the 6-inch hawser, and the anchor was dropped to a mud bottom, in 76 fathoms of water, and by that anchor she was held until the Dirigo came to her rescue, about 9 o'clock in the evening of the same day. The weather was mild, there being only a light breeze and an easy swell of the sea, and some fog; and, so long as those conditions of weather continued, the anchor would have held her until the hawser became weakened by chafing. But the testimony proves that in that locality calm weather or light winds do not usually continue more than one or two days, and in rough weather the 5 and 6 inch hawsers, with a single anchor, would have been insufficient to have held her more than one or two hours. If there had been necessity for doing so, her port anchor and chain could have been used for additional security, but, if dropped in that depth of water, it could not have been raised, and must have been sacrificed by slipping the chain whenever an opportunity came for her to get away. Considering the conditions described, the vessel and the people on board of her were in so much peril that the captain would have acted imprudently if he had declined assistance from the first steamer able to tow the Cottage City which came along. After the Dirigo had undertaken the task, and, before getting under way with her tow, another steamer bound for Puget Sound came along and offered assistance; and by her the captain of the Cottage City sent a message and a request for a tugboat, in response to which a tug was sent, which met the disabled steamer in the Gulf of Georgia, and assisted the Dirigo in towing her to Seattle, a distance of about 90 miles. The Dirigo was at the time employed making regular trips as a carrier of passengers and freight between the ports of Puget Sound and Southeastern Alaska; her tonnage is 843 tons, gross; and her value at that time was from seventy-five to eighty-five thousand dollars. She was making one of her regular trips from Skagway to Seattle, and had on board 47 passengers. Her supply of fuel was insufficient to make the run without stopping at one of the ports in British Columbia, where her bunkers could have been replenished. She received from the Cottage City 13 tons of coal, and 2 tons from the tugboat, which enabled her to proceed to her destination without stopping. She towed the Cottage City approximately 400 miles, and was delayed by the extra burden probably two days, but the testimony does not furnish data from which to calculate the actual additional expense occasioned by her service in bringing the Cottage City to Seattle. The weather was favorable all the way, except the prevalence of fog. In order to make the run through Seymour Narrows, it was necessary to wait for a favorable stage of the tide, and an attempt was made to anchor; but, owing to excessive depth of

water, it became necessary for the two vessels to keep moving all night, and there was considerable difficulty in raising the Cottage City's anchor, assistance from the hoisting power of the Dirigo being necessary for that purpose. No other extraordinary hardships or perils were encountered.

By reason of similarity of the facts, for the purpose of estimating a reasonable salvage award this case may properly be classed with The Costa Rica, Fed. Cas. No. 3,262, and The Sirius, 57 Fed. 851, 6 C. C. A. 614. In the latter case the Circuit Court of Appeals for the Ninth Circuit reversed a judgment of the District Court in favor of the salvor for $20,000, and set aside a contract to pay $20,000 for the service rendered, and awarded $8,000. By taking into account differences in values and distances, and greater difficulties and perils of navigating the northern waters, I consider $12,000 to be a reasonable amount of salvage in this case, 28 per cent. of which would be chargeable against the cargo; but, by reason of an agreement between the parties, the court cannot make any award for salvage of the cargo. Therefore it will be decreed that the libelant recover the total sum of $8,640 and costs, but without interest. Said amount, when paid into the registry, will be distributed by the court to the owner, master, and crew of the Dirigo, upon a scale to be hereafter determined.