### THE AMERICA.

(District Court, D. New Jersey. March 23, 1905.)

SALVAGE—ASSISTING IN MOVING VESSEL FROM BURNING DOCK—COMPENSATION.

Two libelants, who were in a skiff and, at the request of the master of a steam lighter moored to a burning dock in the night, took him and two deckhands to the vessel, and assisted them in casting it loose and pushing it off, rescuing it from a position of imminent peril, *held* to have performed a salvage service, and to be entitled to an award of $200 therefor; the vessel being worth $18,500.

[Ed. Note.—Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit to recover for salvage service.

Abe J. David and William Pintard, for libelants.
John F. Foley and Howard S. Harrington, for claimant.

LANNING, District Judge. The first question presented by the pleadings and proofs in this case is whether the libelants performed a salvage service. It appears that on the night of February 27, 1904, the steam lighter America was tied at the dock of the Borne Scrymser Company, on Staten Island Sound. One of the crew had been assigned to duty as watchman for that night. About midnight a fire broke out in the buildings covering the dock where the America was lying. When the alarm was given the owner of the vessel, Capt. Daniel McElroy, hastened to the dock; but, finding that his access to the vessel by the ordinary route was cut off by the fire, he reached the water's edge some 300 or 400 feet distant from his vessel. There he hailed three men, two of whom were the libelants in this case, who were in an oyster skiff about 50 feet distant from where he was standing. They came to him, and he and two of his deckhands jumped into the skiff, and, at his request, were rowed to the America. On reaching the America it was found that the member of the crew who had been assigned to duty as a watchman for that night, for some reason not explained in the testimony, was not on the vessel. There was no one on board to care for her. She had no steam. Her pilot house had already been scorched by the heat. She was in imminent peril, and it became necessary, in order to save her, to get her away from the dock as speedily as possible.

The libelants claim that when they reached the America in their oyster skiff they were the first to board the vessel, and that they threw off the lines which fastened her to the dock and pushed her bow out from the dock, so as to enable her to catch the ebbing tide and to float out and away from danger. They say that they did not, while they were performing this service, see either Capt. McElroy or any of his deckhands, and they claim that they alone performed the service which

saved the vessel. On the other hand, the captain and his deckhand, Samuel Rose, claim that they were the persons who loosened the lines of the vessel and pushed her away from the dock, and enabled her to float out into the sound and away from the burning dock. The testimony of the libelants that they performed service in saving the vessel is corroborated by that of other witnesses. So, also, is the testimony of Capt. McElroy as to the work done by him and the men in his employ likewise corroborated. I am satisfied that Capt. McElroy, his deckhand, Samuel Rose, and the two libelants all boarded the imperiled vessel the instant the oyster skiff reached her, and that they all joined in the effort to save her. The service performed by the libelants was, therefore, a salvage service.

It is insisted by the claimant that after his vessel had reached a place of safety he paid the libelants five dollars, and that they accepted that sum as full compensation for their service. The evidence, in my judgment, does not warrant such a conclusion. Neither do I think the claimant has established his defense that the libelants have lost their right of recovery by reason of the alleged larceny of a shovel from the vessel. The final question, therefore, is, what amount shall be allowed to the libelants for the salvage service rendered by them. There was no special danger in performing their service. I am convinced that Capt. McElroy assumed command of the vessel and that the libelants acted as his assistants merely. The whole time of their engagement upon the vessel did not exceed an hour. In the case of The Oregon (D. C.) 27 Fed. 871, $200 was allowed to a tug which drew three lighters, worth with their cargoes about $4,500, away from a burning building near which the lighters were moored. In Wilson v. Winchester (C. C.) 30 Fed. 204, the libelant's tug towed a schooner away from a pier near which certain oil works were in flames, and an award of $200 for salvage services was made. In The Rose (D. C.) 31 Fed. 176, the libelant's tug towed a lighter laden with cotton from a burning pier to a place of safety, and $140 was allowed for salvage services. It is admitted that the value of the America was $18,500.

Considering this case in all its aspects, I think an allowance of $200 to the libelants will be fair. There will be a decree to that effect.