## THE CALCIUM.

### (District Court, W. D. Washington, N. D. April 28, 1914.)

SALVAGE (§§ 7, 31*)—SERVICE ENTITLED TO COMPENSATION—RESCUE OF CREW AND TOW OF BURNING TUG.

The rescue in Puget Sound by a power schooner of the master and crew of a burning tug and of a barge in her tow, worth with cargo $3,100, *held* a salvage service, and an award of $300 made therefor; it appearing that the salving schooner incurred little or no risk, and that there was other assistance near which made certain the rescue of the men.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 13, 16, 26, 75–77; Dec. Dig. §§ 7, 31.*]

In Admiralty. Suit by F. B. Hursley, managing owner of power schooner West Coast, against the tug Calcium and barge Roche Harbor. Decree for libelants.

Moncrieffe Cameron and James B. Metcalfe, both of Seattle, Wash., for libelants.

Kerr & McCord, of Seattle, Wash., for claimants.

NETERER, District Judge. On the morning of August 7, 1913, at 6:30 o'clock, while the tug Calcium and scow Roche Harbor, No. ——, was on a voyage from Seattle to Roche Harbor, in the waters of Puget Sound, and when a short distance from shore at Camano Island, was suddenly discovered to be on fire. The tug West Coast, on a voyage from Richardson with a cargo of salmon, bound to Everett, went to her rescue; the flames being visible along the pilot house on the tug. The West Coast approached the stern of the tug Calcium on the windward side, and rescued the fireman, an engineer, and boy, Richard De Mode, who was the master's guest, and then withdrew from the burning tug a short distance and lowered a skiff, about 15 feet long and 4 feet beam, and brought the captain, the cook, and the deckhand, who had taken refuge by hanging on the anchor chain, to the West Coast. When the fire was discovered on the Calcium, the power of its engine was cut off and the tug headed for shore. The tug had stopped when the crew was taken from her. For some reason, not disclosed, the tug started to go around in a "circle about a mile long." Captain Sudlow, who had in the meantime boarded the scow, seeing the Calcium headed that way, called to Captain Hursley of the West Coast to pull the scow out of the way. Before this could be done the burning tug hit the scow at an angle and glanced off. The scow was then moved about 150 yards and anchored; the anchor being loaned for the purpose by the West Coast. The burning tug had begun its second circuit in a smaller circle, when at Captain Sudlow's request the West Coast went to within about 40 feet of her, and Captain Sudlow and his deckhand from the small boat or skiff made a line fast to the anchor chain hanging over the boat. When the West Coast started to pull, the impact drew the anchor overboard, and it went to the bottom of the sound, whereupon Captain Sudlow said: "She is anchored now, and you cannot do anything

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

more." The condition of the weather was fine. There was a light breeze from the westerly, and the tide had been at flood about 2½ hours. About halfway between Camano dock and Utsalady dock lives W. A. Knox, a fisherman, who saw the forecastle aflame and the tug turn towards the beach. He immediately jumped into his boat and went to the rescue. When he was within 300 feet, he saw the West Coast approach and did not proceed any further.

The West Coast is 65 feet long, 15 feet and 4 inches beam, and about 8 feet depth, and is run by gasoline power. The gasoline tank holds 1,200 gallons, and is located forward of amidship. There were about 900 gallons in the tank at the time. The forward part of the tank is about 18 feet back of the bow of the boat. It had on board a cargo of salmon, valued by the captain at $2,000. The front end of the hold is 27 feet back from the stem. The Calcium was 58 feet long, 9½ feet draft, was an oil burner, and had on board master, engineer, deckhand, cook, fireman, and boy, De Mode, and about 70 barrels of oil. The bow of the West Coast, when taking a portion of the crew from the Calcium, was about 15 to 18 feet from the oil tank of the Calcium. The West Coast is owned by F. B. Hursley and E. M. Hursley, and chartered by the Everett Packing Company. On the West Coast, in addition to the crew rendering assistance, was Jack Lundey, intervening libelant in this case. It is stipulated that the value of the property salved is $3,161.06. On November 22, 1913, after filing of the libel herein, there was filed in the office of the clerk of this court a "notice of tender" of $300 "in full settlement of all claims," etc., with an acknowledgment of service by libelants' proctors November 10, 1913. No money is on deposit in the registry of the court, nor is any tender pleaded. The tender is mentioned in the argument of counsel.

A careful reading of all of the evidence in this case convinces me that the services rendered by libelants should be considered a salvage service. While the crew or property salved might not have been lost, but for such services, the attendant circumstances as disclosed by the evidence show that the services should be compensated in a sum exceeding the actual value of the services rendered. The service is not of as high order as counsel for libelants urge upon the court. None of the libelants left the West Coast. No risk was incurred by them with the property, nor in attempting to tow the burning tug, other than such danger as such proximity of gasoline in the tank of the tug might entail, and from the evidence no danger is made to appear. All of the lines were placed upon the scow and the burning tug by the master of the burning tug and his deckhand. The risk was taken by them in the rescue of the property after they were taken from the burning tug. There is evidence of the presence of other assistance which undoubtedly, from the testimony disclosed in the case, would have rescued the men, and this is an important element to be taken into consideration. The Boyne (D. C.) 98 Fed. 444.

After consideration of all of the circumstances as disclosed by the evidence, I think that $300 will be a liberal allowance to the libelants. Spreckles v. The Brussels (D. C.) 38 Fed. 528; The Elmbank, 69

Fed. 104, 16 C. C. A. 164; The Florida (C. C.) 22 Fed. 617; The America (D. C.) 136 Fed. 510. This is practically 10 per cent. of the property salved. This is to be divided, three-fourths to the tug West Coast, and one-fourth between the master and crew and Jack Lundey, the intervening libelant; this to be divided equally between all of the parties.

A decree may be submitted.