## THE ROANOKE.

### (Circuit Court of Appeals, Ninth Circuit. May 18, 1914.)

#### No. 2348.

1. SALVAGE (§ 18*)—RIGHT TO COMPENSATION—VESSELS UNDER COMMON OWN-
ERSHIP.

Where a vessel, on receiving a wireless message from another, which
had broken her propeller, asking for assistance, immediately changed her
course for the disabled vessel, the fact that while on the way her master
called up the president of the company, which was the common owner of
the two vessels, and asked for instructions, did not prevent the service
rendered from being a voluntary one for which the officers and crew were
entitled to salvage compensation under Act Aug. 1, 1912, c. 268, 37 Stat.
242.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 31–43; Dec.
Dig. § 18.*]

2. SALVAGE (§ 13*)—NATURE OF SERVICE—SALVAGE OR TOWAGE SERVICE.

Service rendered by one vessel to another which had broken her pro-
peller at sea and was anchored half a mile from the coast, in response to
wireless messages from the captain of the disabled vessel asking for as-
sistance, and which required the salving vessel to steam five hours from
her course, held a salvage and not a towage service, and entitled to com-
pensation as such.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 16, 23–25; Dec.
Dig. § 13.*]

Appeal from the United States District Court for the Northern Dis-
trict of California; M. T. Dooling, Judge.

Suit in admiralty by A. Sjogren and others against the steamer Ro-
anoke; the North Pacific Steamship Company, claimant. Decree for
libelants, and claimant appeals. Affirmed.

For opinion below, see 209 Fed. 114.

Charles H. Sooy and David L. Levy, both of San Francisco, Cal., for
appellant.

F. R. Wall, of San Francisco, Cal., for appellees.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH,
District Judge.

DIETRICH, District Judge. This was a libel for salvage against
the steamer Roanoke by the officers and crew of the Santa Clara, ex-
cepting the master and chief engineer. In the court below the libel-
ants had a decree for one-half month's pay to each, aggregating
$887.50, and claimant, North Pacific Steamship Company, appeals.

The salient facts may be briefly stated: On April 10, 1913, while
bound from San Pedro to San Francisco, and when in the neighbor-
hood of Point Arguello, the "Roanoke" was disabled by the loss of
her propeller. She was a steamer of 1,654 net and 2,354 gross tons,
worth about $150,000, and was carrying 93 passengers and a cargo.
The injury was such as to leave her without motive power, and, the
water being too deep to afford a safe anchorage, her captain permitted
her to drift in shore from 10:05 a. m., the time the accident occurred,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

until 11:10 a. m., when anchor was dropped in about 14 fathoms of water. She was then at a point about 1½ miles south of east from Point Arguello, and from one-half to three-quarters of a mile from the shore at the nearest point. She remained there at anchor until about 5 o'clock p. m., when the Santa Clara came to her assistance. The Santa Clara, also owned by the claimant, and loaded with cargo and passengers, had left San Francisco on April 9th, bound on a voyage thence to Port Harford, and a little after 10 o'clock a. m. on the next day, April 10th, and when she was within about an hour and a half's steaming of her port of destination, she received a wireless message from the Roanoke, as follows, "Come to our assistance, lost wheel two miles south Point Arguello." Her captain replied, "Your message received, coming to your assistance." Thereupon the Roanoke asked when the Santa Clara would arrive, and the latter replied, "Expect to arrive in five hours." Then the Santa Clara inquired of the president of the claimant company at San Luis Obispo, "Do you want us to go to the assistance of Roanoke—takes five hours." The reply was, "Help him if necessary until tug arrives." Then the Santa Clara sent the following message to the Roanoke, "We are full of freight and passengers; is it absolutely necessary for us to come to your assistance?" The reply came, "We need your assistance at once."

[1] By Act of Congress of August 1, 1912 (37 Stat. 242), it is declared:

"That the right to remuneration for assistance or salvage services shall not be affected by common ownership of the vessels rendering and receiving such assistance or salvage services.

"Sec. 2. That the master or person in charge of a vessel shall, so far as he can do so without serious danger to his own vessel, crew, or passengers, render assistance to every person who is found at sea in danger of being lost; and if he fails to do so he shall, upon conviction, be liable to a penalty of not exceeding $1,000.00 or imprisonment for a term not exceeding two years, or both.

"Sec. 3. That salvors of human life, who have taken part in the services rendered on the occasion of the accident giving rise to salvage, are entitled to a fair share of the remuneration awarded to the salvors of the vessel, or cargo, and accessories."

No question therefore arises because of the common ownership of the vessels. And while the captain of the Santa Clara inquired concerning the wishes of the claimant's president, the fact still remains undisputed that upon receiving the first message of distress from the Roanoke the Santa Clara's course was immediately altered, and from that moment she continued, without stop or further change of course, to steer for the Roanoke; and it must therefore be held that the assistance was voluntarily rendered.

[2] The defense most earnestly pressed is that the service was towage and not salvage; it may be summarily disposed of. A "salvage" service, as distinguished from a towage service, is defined as follows:

"A salvage service is a service which is voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger either present or to be reasonably apprehended. A towage service is one which is rendered for the mere purpose of expediting her voyage, without reference to any circumstances of danger." McConnochie v. Kerr (D. C.) 9 Fed. 50.

See, also, The Flottbek, 118 Fed. 960, 55 C. C. A. 448.

It is clear beyond peradventure that Capt. Dickson of the Roanoke believed he was in peril. No labored analysis of his messages can serve to remove the first and natural impression they make upon the mind; they were calls of distress, and, had they been disregarded by the captain of the Santa Clara, he would have stood in danger of the penalty provided in section 2 of the act, supra. That being the case, we are not disposed nicely to weigh the circumstances and conditions for the purpose of determining how imminent the peril may have been. Considering the situation as he saw it at the time, Capt. Dickson's solicitude for the safety of his ship and passengers was not without reason. It is quite unimportant that as we now look backward the position of the Roanoke may not impress us as having been extremely perilous. "Wisdom born after the event is the cheapest of all wisdom." Though not of a high order, the service is entitled to be classed as salvage service.

The remaining question relates to the amount of the decree. While we think that the allowance was liberal, and possibly in excess of what we would award, we are reluctant to interfere with the discretion of the trial court in a matter where manifestly there is and can be no fixed standard. No principle of law was violated, and it cannot be said that there was a clear abuse of discretion.

Accordingly, the decree will be affirmed.