THE KNICKERBOCKER (two cases).

(District Court, W. D. Washington, N. D.   October 28, 1914.)

Nos. 2674, 2702.

SALVAGE (§ 31*) — ASSISTING BURNING SCHOONER — AMOUNT OF COMPENSATION.

Libelant's tug went to the assistance of a fishing schooner, which had taken fire in the hold, in the daytime. The tug ran two lines of hose on board, which were handled by the crew of the schooner while the tug pumped, and the fire was extinguished in about 25 minutes. The tug was of the value of $30,000, and the saved value of the schooner was $6,000. The service was promptly and efficiently rendered, but involved no particular danger to the tug or her crew. *Held*, that the owner was entitled to a salvage award of $600, and the master and crew of $400.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 75–77; Dec. Dig. § 31.*]

In Admiralty. Suit by E. N. Charlesworth and others against the American steamer Knickerbocker, submitted with suit by the Stimson Mill Company, as owner of the steam tug Tillicum, against said steamer. Decrees for libelants.

James Kiefer, of Seattle, Wash., for master and crew.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for owners.

Kerr & McCord and C. H. Hanford, all of Seattle, Wash., for claimant.

NETERER, District Judge. These are two admiralty cases, heard together, in which the owner, master, and crew of the steam tug Tillicum seek to establish their claims for salvage against the American steamer Knickerbocker for services rendered on the 27th of January, 1914. On this day, about 11 o'clock in the forenoon, the American fishing schooner Knickerbocker was discovered on fire while in the waters of Puget Sound on the westerly side of West Point Spit. The Tillicum was lying about one-half a mile from this vessel, in Shilshole Bay, "coming up alongside the Grace Dollar to pump fresh water aboard." A message was delivered to the captain of the Tillicum, calling his attention to the fact that the fishing schooner was afire. The Tillicum immediately went to the rescue with all possible speed. On the way it got its fire pump and apparatus into shape. Two dories

had left the distressed vessel before the arrival of the Tillicum, in which the compass and "stuff of any value" had left the ship. In the dories were three of the crew of the burning vessel. The captain and other members of the crew remained on board. The Tillicum came alongside the Knickerbocker and fastened on the starboard side with two lines, one forward and one aft, about amidships. The fire was in the hold of the Knickerbocker. Two hose were passed to the captain and crew of the Knickerbocker by the master of the Tillicum, one 2½-inch hose and the other 1½-inch hose. These hose, carrying two streams of water, were turned on the fire by the crew of the Knickerbocker. The captain of the Tillicum and two of his crew were on the deck of the Knickerbocker, to keep the hose straight and from becoming kinked. The fire was extinguished in about 25 minutes. After the fire was extinguished, at the request of the master of the Knickerbocker, the Tillicum towed the burned vessel to the Seattle Dry Dock & Shipbuilding plant. It took about an hour and a half to tow the vessel to the dock. The Tillicum was a vessel valued at $30,000. The Knickerbocker was a larger vessel, the salved value of which was $6,000. Both vessels burned crude oil. The men of the crew of the Tillicum testified that they believed the Knickerbocker was a gasoline burner, but there are no extraneous facts disclosed upon the trial upon which to base such a conclusion. The heat of the fire on the Knickerbocker was at no time intense. The crew of the Knickerbocker handled and applied the hose to the fire, and the Tillicum pumped the water for this purpose. The master and crew of the Tillicum have instituted actions in which they pray an allowance of $5,000, alleging the value of the vessel to be $40,000. The owners of the rescuing vessel ask for judgment in the sum of $3,000.

Upon the trial it was stipulated that both causes be tried together. The claimant made tender, and offered to pay, at the time the testimony was being taken, to the master and crew of the Tillicum the sum of $400 for services rendered, and to the owners of the Tillicum the sum of $600, making a total of $1,000. The libelants contend that the service rendered was a meritorious service, and that the sum tendered was not sufficient compensation. The main elements to be considered by the court in determining the amount of salvage are stated by the Supreme Court of the United States, by Justice Clifford, in the case of The Blackwall, 10 Wall. 1, 14 (19 L. Ed. 870) as follows:

"(1) The labor expended by the salvors in rendering the salvage service. (2) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed. (4) The risk incurred by the salvors in securing the property from the impending peril. (5) The value of the property saved. (6) The degree of danger from which the property was rescued."

Having due regard to these various factors, it may be concluded that the assistance rendered was very prompt and energetic and skillful to the degree required. There is no element of particular danger disclosed by the testimony. There was no risk incurred by the salvors of consequence. The burden of the danger and of the extraordinary service was assumed by the master and crew of the burning vessel.

They manipulated the nozzles of the hose and placed themselves in a position of closest contact with the destroying element. The value of the property saved, I think, from the testimony, cannot be placed above $6,000. The time employed, exclusive of the time for towing the vessel to the dry dock, was about 25 minutes. There was no expense of any consequence incidental to the service rendered, nor were there any lives imperiled in the salvage service. That there was no great element of danger to the lives of the participants is somewhat emphasized by the fact that one of the crew of the Tillicum was asleep and was permitted to slumber during the entire service rendered.

Salvors have a right to claim compensation for beneficial service voluntarily rendered in rescuing a vessel from peril, and have a lien upon the property saved, and it is the policy of the law to deal liberally with salvors, so as to stimulate extraordinary exertion and courage in rescuing imperiled property and human lives; but a rescued vessel must be treated fairly in view of all of the surrounding circumstances. I think, in the light of all of the circumstances developed by the testimony, that the amount tendered is liberal compensation for the services rendered. The Elmbank, 69 Fed. 104, 16 C. C. A. 164; The America (D. C.) 136 Fed. 510; The Loyal, 204 Fed. 930, 123 C. C. A. 252; The Brina P. Pendleton (D. C.) 200 Fed. 848; Reichert v. Carfloat (D. C.) 213 Fed. 127 . This tender was not made until after the trial of the case before the commissioner had commenced and some of the testimony had been taken. While there was no money actually tendered, the offer to pay was made, and there was no disposition to accept it. I think the facts in this case come well within the holding of this court in The Calcium, 218 Fed. 267, filed April 28, 1914.

A decree may be entered in favor of the crew of the Tillicum for the sum of $400, this to be divided among the seamen in the proportion that the wages received by the several men bears to this amount; and a decree may also be entered in favor of the Stimson Mill Company, owners of the tug Tillicum, in the sum of $600. I think the costs in this case should be divided between the several parties; the libelants to pay each one-fourth of the costs, and the claimant to pay one-half of the costs; no proctor's fees to be charged against either party.