## THE COQUITLAM CITY.

(District Court, W. D. Washington, N. D. May 1, 1917.)

### No. 3488.

1. ADMIRALTY ⬤═86—REPORT OF COMMISSIONER—EXCEPTIONS.

For good cause shown the court may consider exceptions to the report of a commissioner, although not filed within the time prescribed by the rules, since the findings and conclusions of the commissioner are advisory only.

2. SALVAGE ⬤═27—AMOUNT OF COMPENSATION.

A salvage award of $3,500 made for the services of a tug in towing a water-logged and unmanageable schooner, laden with a million feet of lumber, in from the sea to Seattle, and thereafter pumping her out twice, the schooner and cargo being worth from $15,000 to $18,000 and the tug about $5,000; $2,600 of the award to the tug, and $900 to officers and crew.

In Admiralty. Suit by C. J. Clark and others against the British schooner Coquitlam City; Frank Forsythe, claimant, and the Puget Sound Tugboat Company intervener. On exceptions to report of commissioner. Exceptions of claimant sustained, and exceptions of intervener denied.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James Kiefer, of Seattle, Wash., for libelants.

C. H. Hanford, of Seattle, Wash., for claimant.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for intervener.

NETERER, District Judge. [1] I think the court should consider the exceptions filed to the report of the commissioner. The objections to the consideration thereof for the reason that they were not filed within the time provided by admiralty rule No. 45, I think, should not obtain. Nor do I think that the court is bound by the findings and conclusions of the commissioner under the order of reference made, as such findings are merely advisory, and the court may disregard them entirely, where claimant had entered an appearance and contests the claim asserted. Luckenbach v. Delaware, L. & W. R. Co. (D. C.) 168 Fed. 560, I do not think is controlling here. It appears in this case that one of the proctors was unavoidably situated so that the exceptions could not be filed, and the other proctor was not in the case until the filing of the exceptions.

[2] I think the amount of salvage recommended by the commissioner in the sum of $5,000 should be revised to the sum of $3,500, $2,600 of this sum to go to the tug Pioneer, and $900 to be divided between the crew, in proportion to the monthly wage paid to them.

The exceptions of the Puget Sound Tugboat Company I think should be denied. It is not very material in this case whether the valuation placed upon the cargo and the vessel by the commissioner is $15,000 or $18,000. I think the allowance made for salvage would be ample on either valuation. The respondent vessel is a British vessel, and before loading for this trip was put on the dry dock and certain repairs made for the purpose of strengthening the vessel. It went to Bellingham and loaded over a million feet of lumber, and the agent and surveyor for the board of marine underwriters was employed for the purpose of examining and certifying as to its insurability, and insurance was declined, but was obtained upon the cargo.

On the morning of December 7, 1916, the vessel was left at a point five miles outside of Cape Flattery by the tug. Sail was set and the vessel proceeded in a southwest course, making about a point and a half leeway, going about 8 knots an hour. At that time the mate sounded the pumps and found 5 feet of water in her hold. The pumps were started, and later were again sounded, and found some 7 or 8 feet of water. It was then decided to wear ship and return to port for repairs. At this time the vessel was approximately 45 miles from Cape Flattery. During the maneuvering of wearing the ship, a strong southeast sea struck the rudder, carrying away her wheel and part of the steering gear. While the master and crew were rigging a spar and tackle, so that the rudder might again be used for steering, a northeast by east course was set for Cape Flattery and held until about 10:30 on the morning of December 8th, when the tug Pioneer approached. At this time there was about 12 feet of water in the hold of the ship and she was flying the international code signal "Y. P.," indicating a tug was wanted. The master of the tug and the master of the vessel were unable to agree upon a price for towing the vessel

to port at Victoria, and the master of the tug stated that he would only tow the vessel on a salvage basis, and finally this was the arrangement made. A high sea was running; the vessel was waterlogged, unmanageable, and constantly yawing into the swell of the sea. The tug proceeded with the vessel in tow, and arrived at Port Townsend at 5:30 o'clock on the morning of the 9th of December. The master came to Seattle on arriving at Port Townsend and arranged with the manager of the tug company to pump the water out of the vessel. After this was done the vessel was towed to the port of Seattle dock at Smith's Cove and pumped out twice thereafter. The tug has an iron hull, is 176 feet long, 21 feet beam, and 13 feet depth of hold, with a gross tonnage of 160; value, approximately $50,000. The tug Holyoke, belonging to the same company, approached after the Pioneer had started with the tow and offered assistance. After wireless communication with the tugboat company's office, the two tugs proceeded with the vessel.

There is nothing in the evidence that would indicate that the services of the Holyoke were necessary. The names of the crew of the Pioneer, and their monthly wage, is as follows:

| | | | |
|---|---|---|---|
| H. F. Astrup. | Master. | Wage, | $210.00 |
| R. Frederick, Jr. | First mate. | " | 110.00 |
| George Penny. | Second mate. | " | 90.00 |
| Fred Evans. | Deck hand. | " | 45.00 |
| Gust Pierson. | Deck hand. | " | 45.00 |
| C. J. Clark. | Chief engineer. | " | 160.00 |
| J. M. Jones. | First assistant engineer. | " | 110.00 |
| P. W. Primrose. | Fireman. | " | 50.00 |
| Ben Rust. | Fireman. | " | 55.00 |
| J. R. Blabes. | Fireman. | " | 50.00 |
| Earl Pratt. | Cook. | " | 60.00 |
| Stacy W. Norman. | Wireless operator. | " | 55.00 |

The testimony shows that no heroic salvage service was performed. The services were highly beneficial and meritorious. The policy of the law is to deal liberally with salvors. I think the uniform holding of the federal courts, including the Circuit Court of Appeals of this circuit, while always recognizing the high order and merit of salvage service, would not justify the court in holding that a higher sum than allowed in this memoranda should be permitted, and this conclusion, I think, is fortified by the following cases: The Strathnevis (D. C.) 76 Fed. 855, 861; The Cottage City (D. C.) 136 Fed. 496, 499; The Santurce (D. C.) 136 Fed. 682, 689; The Knickerbocker (D. C.) 218 Fed. 524; The Roanoke (D. C.) 209 Fed. 114; Id., 214 Fed. 63–65, 130 C. C. A. 503; The Apache (C. C.) 124 Fed. 905, 914; The S. C. Schenk, 158 Fed. 54, 59, 85 C. C. A. 384; The Willis A. Holden, 174 Fed. 5, 10, 98 C. C. A. 43; The Kennebec, 231 Fed. 423, 425, 145 C. C. A. 417.