## THE W. C. SMITH.

(District Court, D. Massachusetts. February 21, 1927.)

No. 3426.

I. Salvage ⬡17—Vessel whose efforts did not contribute to success of salvage of burning schooner held not entitled to salvage award.

Vessel, which succeeded in arousing sleeping crew of burning schooner and then went in search of assistance, which efforts did not contribute to success of salvage operation, held not entitled to salvage award, under principle of salvage law that no award can be given for futile efforts, however meritorious may have been the exertion.

2. **Salvage** ⊙⟞31—**Launch and lighter held entitled to awards of $220 and $280, respectively, for salvage services to burning schooner and cargo valued at $4,500.**

Where fire on schooner, which, with cargo, was valued at $4,500, was checked by flounder dragging launch, which towed and beached schooner, and thereafter fire was extinguished by libelant's steam lighter, which pumped out and patched schooner and towed her to dock, where lighter continued pumping, *held*, that launch was entitled to award of $220 and lighter to $280 for salvage services, payable one-fifth by owners of hull and four-fifths by owners of cargo; services rendered not being extraordinary or hazardous, and no danger to life or property being involved.

In Admiralty. Libel by Thomas E. Reed against the schooner W. C. Smith, in which Frank Favaloro intervened. Decrees for libelant and intervener.

Edgar S. Taft, of Gloucester, Mass., for libelant.

John J. Burke, of Gloucester, Mass., for petitioner Faraloro.

Foye M. Murphy and John W. Black, Jr., both of Boston, Mass., for claimant of cargo.

Henry Parkman, Jr., of Boston, Mass., for the W. C. Smith.

BREWSTER, District Judge. The above-entitled libel and intervening petition are brought to recover compensation for salvage services rendered the schooner W. C. Smith. The evidence discloses the following facts:

The W. C. Smith is a British schooner of about 100 net tons. On the morning of March 3, 1926, she was anchored in the Gloucester Harbor, south of Ten Pound Island, near the eastern shore. She had on board a cargo of fish. In the early morning a fire broke out forward, which was first discovered by the captain of the Dorcas, a gas screw boat which was on her way out of the harbor. The Dorcas went to the schooner, succeeded in arousing the crew, and, not being equipped to fight the fire, she went in search of assistance. She met the launch Julia, in command of the intervening petitioner, Frank Favaloro, who had already discovered the fire. The Julia, a flounder dragging launch, 80 feet long, of 54 net tons, with a value estimated by the owner at $30,000, had on board a crew, besides the captain, of five men. She went alongside the schooner and immediately began playing a stream of water upon the mast and rigging, which, by this time, had caught fire from flames coming out of the hatch, and succeeded in arresting the progress of the flames, but was not able to extinguish the fire. In the meantime, about 4 o'clock a. m., the Coast Guard life-saving crew of seven men arrived in their rowboat, having discovered the fire from their lookout. After their arrival it became apparent to the Coast Guard officers and the captains of the Julia and of the Smith that it would not be possible to control the fire with the apparatus available. They therefore agreed that the best course to pursue would be to tow the burning vessel to Pavillion Beach, in Gloucester Harbor, about one mile away, and beach her there. Accordingly the anchor was slipped and the Julia towed the schooner across the harbor to Pavillion Beach, and, as they approached the beach, the Julia cast off her towing line and the Smith of her own momentum rode up on the beach. During all this time the captain of the Smith and his crew of one man were on board, as were also the Coast Guard crew, the captain of which had taken charge and had given the orders. The wind was W. N. W. and the sea was smooth, except for a slight swell.

About 4:30 o'clock a. m., and shortly after the schooner grounded, the fireboat Phillip, a steam lighter owned by the libelant and under contract to the city of Gloucester to put out fires, arrived and at once got its equipment into action; but it was not until 10 o'clock a. m. that the fire was under control, and it was completely extinguished about 11 o'clock a. m.

The Dorcas had returned to the schooner before the lighter had thrown off her anchor, but took no part in the towing, and it cannot be said that her efforts contributed to the salvage of the vessel and cargo. While the schooner was being towed, the Dorcas cast loose and proceeded to the fishing grounds, but in so doing managed in some way to damage her rigging and stanchions to the extent of $100. The Julia stayed around for some time after the Phillip had arrived; then proceeded on her way to the fishing grounds.

After the fire had been extinguished, the Phillip left the schooner, returning early in the afternoon, and began pumping her out and patching up holes that had been made when she went aground. Having procured a towboat, the libelant caused the schooner W. C. Smith to be floated at high tide and then towed to the Booth Fisheries dock, and on the next morning she was towed to the Gorton Pew dock, where her cargo was discharged. In the meantime it was necessary to keep the schooner pumped dry, a service which the Phillip rendered. For the towage libelant paid the sum of $60. The libelant makes no claim for the time or service rendered in putting out the fire, but only claims compensation

for services rendered in pumping, floating, and towing the schooner from Pavillion Beach to the Gloucester docks.

It appeared that at the time the schooner was beached the weather was fair and the sea moderately calm, and that about noon of March 3, 1926, the wind shifted to southwest and the libelant was led to raise the schooner and tow her to Gloucester Harbor by the belief that a storm was approaching, which would work serious damage to the schooner if she were allowed to remain grounded on the beach.

It was agreed that the value of the hull of the schooner W. C. Smith was $1,000, and it appeared in evidence that the cargo sold for $3,485.66, so that the approximate value of the schooner and her cargo would be about $4,500.

[1] I cannot find that the Dorcas contributed to the success of the salvage operation. I understand it to be the principle of salvage law that no award can be given for futile efforts, however meritorious may have been the exertion. Hughes on Admiralty (2d Ed.) p. 141; Kennedy's Civil Salvage (2d Ed., London, 1907) p. 31.

[2] But it is clear that salvage service was rendered by the Julia and by the Phillip, entitling these vessels to compensation. At no time was there any danger to life or property, and no extraordinary hardships were encountered. There was nothing extraordinary in the services rendered. It was a simple case of towing and pumping. The services rendered in extinguishing the fire by the Phillip do not enter in as an element in the award. The services rendered, however, were successful and meritorious, and deserve recognition. The libelant and the master and crew of the Julia are entitled to reasonable compensation for services rendered. I consider that an award of $500 would be fair to all concerned, and would be consistent with awards made in cases somewhat similar. See The Brandywine (C. C. A.) 87 F. 652; The Calcium (D. C.) 218 F. 267; The Florence (D. C.) 215 F. 283; The Knickerbocker (D. C.) 218 F. 524.

This award is to be apportioned among the salvors as follows:

$280 to the libelant Thomas E. Reed:

$220 to those who would be entitled to participate under the intervening petition of Frank Favaloro.

To this award the owners of the hull should contribute one-fifth and the owners of the cargo four-fifths.

Decrees may be entered accordingly.